IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PAUL MCDONALD | * | |
|     Plaintiff, | | |
| v. | * | CIVIL ACTION NO. PJM-06-2357 |
| | | |
| WARDEN R. R. SOWERS | * | |
| LT. EDWIN STIGILE | | |
| B. CASSIDY | * | |
| CORRECTIONAL OFFICER J. HARSH | | |
| L. COLE, MAILROOM | * | |
| CASE MANAGEMENT SPECIALIST | | |
|   K. A. LEISINGER | * | |
| REG. HSA R. EICHELBERGER | | |
|     Defendants. | * | |

\*         \*         \*         \*         \*         \*         \*

| | | |
|---|---|---|
| PAUL MCDONALD | * | |
|     Plaintiff | | |
| v. | * | CIVIL ACTION NO. PJM-06-2375 |
| | | |
| LT. EDWIN STIGILE | * | |
| OFFICER J. HARSH | | |
| OFFICER J. STOTLER | * | |
| MRS. B. CASSIDY, CMS | | |
|     Defendants. | * | |
| | \*\*\* | |

**MEMORANDUM OPINION**

I.    Background

The above-captioned 42 U.S.C. § 1983 prisoner civil rights actions have been consolidated for all purposes. In *McDonald v. Sowers, et al.*, Civil Action No. PJM-06-2357 (D. Md.), Plaintiff complains that on September 5, 2006, Roxbury Correctional Institution ("RCI") Lt. Stigile verbally threatened and yelled at Plaintiff and grabbed and threw an inmate rule book across Plaintiff's cell and RCI Correctional Officer Harsh taunted, harassed, and verbally "assaulted" Plaintiff.[1] *Id.* at

---

[1]    On October 23, 2006, the Court received for filing Plaintiff's supplemental pleading in which he complains that his legal mail, to the Director of the Inmate Grievance Office, a private attorney, and private assistance and legal agencies, is being tampered with by RCI staff as prison directives clearly provide for "uncensored and unlimited mailing privileges to the Governor, Attorney General, courts of law or your

Paper No. 1. He further claims that he is 100% disabled and is being denied proper medical treatment[2] and that despite his indigency, he is being denied legal papers, writing material, and the ability to use certified mail. *See McDonald v. Sowers, et al.*, Civil Action No. PJM-06-2357 at Paper No. 1. In *McDonald v. Stigile, et al.*, Civil Action No. PJM-06-2375 (D. Md.), Plaintiff alleges that Officers Harsh and Stotler and Lt. Stigle threatened him with harm unless he went to segregation review and Mrs. Cassidy denied him legal writing materials and the right to send outgoing mail certified.[3] *Id.* at Paper No. 1.

II.   Dispositive Filings

Currently pending is the Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Defendant Eichelberger and the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendants Sowers, Stigile, Harsh, Stotler, Cassidy, Cole, and Leisinger. Paper Nos. 15 & 27. The matter has been fully briefed. For reasons to follow, Defendants' dispositive filings, construed as Motions for Summary Judgment, shall be granted. See Local Rule 105.6. (D. Md. 2004).

III.   Standard of Review

Summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

attorney." Paper No. 10. He attaches letters written to the federal circuit court, administrative remedies sent to the Commissioner and the RCI Warden, and the RCI Inmate Handbook as exhibits. *Id.*

[2]   Plaintiff claims that he is being denied care for medical and mental health conditions, physical disabilities, and problems with his eyes.

[3]   In *McDonald v. Stigile, et al.*, Civil Action No. PJM-06-2375, Plaintiff sought compensatory relief and also requested removal from RCI. The record shows that Plaintiff was removed from RCI in 2006, and on or about April 20, 2007, was released from confinement. Paper No. 31. Therefore, his request for injunctive relief has been rendered moot.

322 (1986). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete
failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*, 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment.  *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted).  Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

IV.     Analysis

   **Medical Care**

Plaintiff claims that he is being denied care for his medical and mental health conditions, physical disabilities, and problems with his eyes.  He names Nurse Eichelberger, the Director of Nurses for Correctional Medical Services, Inc. in the Hagerstown, Maryland state prison region, as a Defendant, but raises no particular claims alleging her personal involvement in the denial of care.  Eichelberger affirms that she never administered care to Plaintiff.  Moreover, none of the Defendants are alleged to have personally denied Plaintiff medical care.

As an inmate presenting a denial of medical care claim in violation of the Eighth Amendment, Plaintiff must prove two essential elements.  First, he must satisfy the "objective" component by illustrating a serious medical condition.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).  If this first element is satisfied, Plaintiff must then prove the subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06).  "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference."  *Id*. at 837.  Staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."  *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

Assuming Plaintiff has satisfied the first element by demonstrating a serious medical condition, the undersigned concludes that he has failed to prove the second element by showing that the treatment received for his conditions was so inadequate as to meet the deliberate indifference standard announced in *Estelle*.  Defendant Eichelberger states that Plaintiff has a history of bizarre behavior, possibly related to mental health issues.

From November 2, 2004, to September 24, 2006, Plaintiff submitted approximately 55 sick-call request forms complaining of pains in his head, neck, shoulder, and back; ringing in his ears;

5

and vision problems. His medical record for that two-year period is extensive. He was evaluated repeatedly by nurses, physician's assistants, optometrists and doctors, and provided Motrin, Tylenol, analgesic balm, and Disalcid, a non-steroidal anti-inflammatory medication ("NSAIDs").

In 2005, X-rays were conducted of his cervical spine,[4] skull, and shoulder, with negative results and a CT scan was performed of Plaintiff's head, with unremarkable results. In May of 2006, lumbosacral x-rays were ordered of Plaintiff's back. He refused to have the x-rays taken.

In 2005, Plaintiff was provided a cane[5] and physician's orders for front handcuffing were written due to Plaintiff's subjective complaints of shoulder pain. The handcuffing order was renewed indefinitely in April of 2006, but discontinued on October 30, 2006. In addition, in March of 2006, a physician penned an order recommending that Plaintiff be moved to a housing unit closer to the medical unit. On March 16, 2006, a nurse practitioner recommended that Plaintiff be moved to a lower bunk on a lower tier, which was granted. In May of 2006, Plaintiff received a back brace. A wooden cane was provided in June of 2006. Plaintiff was evaluated by a physician in the Neurology Clinic on October 30, 2006, and was ordered moved to a medial housing unit because of his degenerative joint disease and problems walking.

On January 13, 2006, Plaintiff filed a sick-call request complaining of blurred vision and seeing spots. Over the course of the following eight months he was seen by three different optometrists. Plaintiff was seen by an optometrist on January 28, 2006, for complaints of tearing, photo phobia, floaters, and flashes. Plaintiff's vision was found to be 20/20 in both eyes and he was provided artificial tears and educated about eye care. Plaintiff submitted a sick-call request in

---

[4] The x-ray, taken on January 5, 2005, showed cervical spondylosis and osteoarthritis, but no fractures.

[5] The physician's order for the cane was tempered by the observation that Plaintiff had threatened correctional officers and recommended that it only be used when Plaintiff had to walk a long distance.

March of 2006, complaining that his eyeglasses were broken and scratched.  On April 14, 2006, he was seen by an optometrist who prescribed new eyeglasses.  They were received on May 1, 2006.  Plaintiff, however, was dissatisfied with those eyeglasses, and in June of 2006, complained that they were not tinted and that medical personnel were responsible for him developing cataracts.  Plaintiff was seen again by the optometrist on August 28, 2006, but was not referred to an ophthalmologist.  Rather, the optometrist ordered new eyeglasses for Plaintiff, but when the eyeglasses were ready on September 22, 2006, Plaintiff refused to accept them.

No deliberate indifference has been established here.  Plaintiff is approximately 71 years old and suffers from various problems, including degenerative back disease attributable to spondylosis and osteoarthritis and eye problems.[6]  He was seen repeatedly for his complaints.  Plaintiff received x-rays and a CT scan; was provided a cane, back brace, eyeglasses; and was prescribed various pain and anti-inflammatory medications.  In addition the manner in which he was housed and escorted was modified in light of his age, alleged pain, mobility limitations, and medications.

**Verbal Assaults and Threats**

Plaintiff claims that he has been subject to verbal threats and harassment at the hands of Defendant Officers.  This allegation does not state a claim.  While this Court does not excuse such alleged behavior, such acts alone are not sufficient to state a claim under the Eighth Amendment.  *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 n. 11 (10th Cir.1998); *accord Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y.1998) ("verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not

---

[6] The record also shows that Plaintiff has been diagnosed with depression, paranoid schizophrenia, and anti-social behavior and received psychiatric referrals and medication.

7

constitute the violation of any federally protected right" under section 1983); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir.1993); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980).[7] Defendants are entitled to judgment as to this claim.

**Access to Courts**

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only where the inmate is able to demonstrate actual injury from such deprivation. *Id*. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id*. at 353. Rather, the *Lewis* Court concluded that *Bounds v. Smith*, *supra*, stood essentially for the proposition that inmates are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they be provided the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355.

Plaintiff claims mail interference and denial of legal writing materials, along with interference with his right to send outgoing mail certified. The record shows that Plaintiff has been provided with stationary supplies on various occasions. Further, RCI personnel attempted to accommodate Plaintiff's repeated requests for writing materials by providing him same at his

---

[7] Plaintiff continually makes reference to a November 6, 2004 guard assault but does not specifically implicate the named Defendants in that alleged incident. In any event, Plaintiff raised this excessive force claim in *McDonald v. Sowers*, *et al.*, Civil Action No. PJM-04-4035 (D. Md.). On June 20, 2005, the Court granted summary judgment in favor of Defendants. *Id*. at Paper Nos. 18 & 19. This Court's judgment was affirmed on appeal. *Id*. at Paper No. 23. Plaintiff is therefore precluded from re-litigating this claim.

8

segregation reviews or at their offices. On many occasions Plaintiff's failure to receive the materials was due to his own behavior when he refused to appear at the aforementioned reviews or walk to his case management specialist's office. In addition, Plaintiff has failed to bring forth information, through affidavit and exhibits, to show that he suffered the legal harm required under *Lewis*. Defendants are entitled to judgment as to this claim.

VI. Conclusion

For the aforementioned reasons, Defendants' Motions for Summary Judgment shall be granted. A separate Order reflecting the rulings in this decision shall follow.

Date:   6/28/07                                        /s/
                                        PETER J. MESSITTE
                                        UNITED STATES DISTRICT JUDGE